UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ELVISA DJEDOVIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:19 CV 2362 RWS |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner Social Security | ) | |
| Administration | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Elvisa Djedovic brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying her application for a period of disability and disability insurance benefits.  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

### *BACKGROUND*

On November 23, 2016, Plaintiff Djedovic protectively filed an application for a period of disability and disability insurance benefits pursuant to Title II, 42 U.S.C. §§ 401 *et seq.*  [Tr. 96-98]  On November 28, 2016, Djedovic filed her application summary which alleged that her disability began on July 15, 2015.  [Tr.

166-167]   Djedovic's application was denied on initial consideration.  [Tr. 99-105]

Subsequently, she requested a hearing before an Administrative Law Judge (ALJ).

Djedovic, accompanied by counsel, attended the hearing on September 18, 2018.

[Tr. 52]  On February 12, 2019, the ALJ issued a decision denying Djedovic's

application concluding that Djedovic was not under a disability.  [Tr. 31]  On June

26, 2019, the Appeals Council denied Djedovic's request for review.  [Tr. 1]

Djedovic asserts that she is disabled due to post-traumatic seizures, post-

concussive headaches, depression, anxiety, and limitations with her memory and

concentration.  [Tr. 57]

     Djedovic filed the present appeal for judicial review, seeking an award of

benefits because: 1) the ALJ posed an improper hypothetical to the vocational

expert by omitting impairments regarding Djedovic's  concentration, persistence,

and maintenance of pace; 2) the ALJ failed to give deference to one of Djedovic's

treating physician's opinions.

### Administrative Record

     For evidentiary purposes, I have considered Djedovic's's Statement of

Uncontroverted Material Facts [Doc. 10-1] and the Commissioner's Statement of

Additional Material Facts [Doc. 13-2]  Both parties admit these facts with

clarifications.

Djedovic was born on November 4, 1981.  She was 36 years old at the time of her hearing before the ALJ.  She completed a couple of years at college.  Her past employment included working as an assembler at factory, a nurse's assistant, a daycare center worker, a cashier, a customer service manager, a machine operator, and a housekeeper.  [Tr. 63-64]  The injury that led to her disability claim arose when she was working as a housekeeper in a commercial building.  On July 15, 2015, she hit her head on a metal box while getting up from a kneeling position.  [Tr. 465]  She started getting dizzy and felt faint.  She was taken to Des Peres Hospital where she was diagnosed with a concussion.  She had a CT scan which was negative.  [Tr. 254]

On July 16, 2016, Djedovic was seen at Concentra Medical Center (for a worker's compensation evaluation) where she was diagnosed with cervical strain, vertigo, a closed head injury, and concussion.  [TR. 264]  The encounter report noted "No work, Mental and physical rest" and a follow-up appointment in a week.  She was prescribed Metaxalone (a muscle relaxant).  On July 23, 2015, Djedovic returned to Concentra for her follow-up appointment.  She reported that she was having headaches and was dizzy and vomiting almost every night.  [Tr. 266]  The medical report of the visit notes "no confusion" and that her judgement and insight were normal.  She remained off work and told to return in ten days for a follow up exam.  She was prescribed ibuprofen for pain and an anti-nausea medication.  On

3

July 31, 2015, she returned to Concentra for her follow-up appointment.  She
reported that she had dizziness, cognitive impairment, headache, nausea,
depression, and sleep disturbance.  [Tr. 273]  The report noted that she had
impaired concentration, impaired sequencing ability and impaired cognitive speed,
and that she was depressed.  No medications were prescribed.  She was released to
perform modified work.

On August 11, 2015, Djedovic made an unscheduled visit to Concentra.  She
reported that her dizziness symptoms were getting worse and that she had fallen
twice that day and three times the previous day.  [Tr. 275]  Her husband told her
that she had two episodes that looked like seizures where she had fallen and had
shaking.  She reported that she lost consciousness but that the episodes only lasted
a few seconds and that she was lucid immediately afterwards.  Her exam revealed
impaired balance and a positive Romberg's sign (able to stand with feet together
with eyes open but sways or falls when eyes closed).  Her judgement and insight
were found to be normal as were her mood and affect.  She was prescribed
etodolac (reduces pain and swelling), tramadol hcl (a pain medication), and
medication for nausea and dizziness.   On August 19, 2015, Djedovic returned to
Concentra for a follow-up appointment.  She reported continuing issues with
dizziness and passing out.  Her judgment and insight were deemed to be normal.
She was referred to a neurologist.  [Tr. 278-279]

Shortly thereafter, from August 31, 2015 through September 2, 2015, Djedovic was hospitalized at St. Anthony's Medical Center after an episode in which she lost consciousness.  [Tr. 312]  She was diagnosed with "possible syncope or seizure and unspecified hypotension.  A CT scan of her head and her EEG were both normal.  [Tr. 314]  Her EKG and echocardiogram were both unremarkable.  Her headaches and dizziness were noted as chronic and likely caused by her work injury concussion.  The hospital's report noted she has been treated conservatively post-concussion.  [Tr. 315]  Her coordination and gait were deemed to be normal.  Her judgment and though content and her mood and affect were all deemed to be normal.  [Tr. 317]  Djedovic was prescribed anti-epileptic medications.  [Tr. 570]  On September 8, 2015, Djedovic was seen by neurologist David Peeples, M.D. for an independent medical exam.  [Tr. 905]  She reported that she has not had any further spells since taking the anti-seizure medication.

On November 12, 2015, Djedovic was seen by SLUCare physician Karen Woodson, M.D.  [Tr 404]  Djedovic reported that since her discharge from the hospital on September 2nd she had not has any episodes of syncope (fainting) but had small episodes of dizziness.  She was provided with a heart monitor to check for arrythmia.  On January 20, 2016, Djedovic was seen at SLUCare by Yi Pan, M.D.  [Tr. 412]  She reported that her episodes of syncope were reduced to 2-3 times a month, her last episode occurring two weeks ago.  She reported headaches

which woke her up at night.  She was Romberg positive (got dizzy when her eyes were closed) and of a fainting episode.  Her gait was "unstable on tandem and toe walking."  Djedovic reported feeling unbalanced since her work accident and feeling dizzy when she stands for long periods of time.  [Tr. 413]  She was diagnosed with post-concussion syndrome.

On February 8, 2016, Djedovic was seen by Emily Doucette, M.D. at the South County Health Center.  She was diagnosed with having an "odd constellation of syncope, headache, and some convulsions after a head injury.".  [Tr. 970]  Her mood and affect here noted as depressed but her judgment and insight were deemed appropriate.  Doucette recommended ibuprofen for the headaches and counseling for depression.  A follow-up appointment was recommended for late April or early May.

On March 24, 2016 Djedovic went to a follow-up visit at SLUCare.  [TR. 424]  She reported that she was having a seizure spell once per week.  Her EEG was normal and her MRI, conducted at the previous visit, was normal.  Her memory, concentration, comprehension, and articulation were all noted as normal.  Her prescription of Topamax (for seizures) was increased to a 100 mg dose.  On April 6, 2016, Djedovic was seen at Barnes Hospital to receive a continuous EEG monitoring device in an attempt to capture one of her syncope episodes.  [Tr. 364]  Her motor skills were found to be normal and she was Romberg negative (no

dizziness when eyes closed).  She was alert and oriented and her mood was "pleasant."  She did not have any seizures while under EEG monitoring.  [Tr. 366]

On April 25, 2016, Djedovic returned to the South County Health Center for a follow-up visit with Dr. Doucette.  She sought treatment for depression.  She was found to be alert and cooperative but depressed and sad (but not anxious).  Her judgment and insight were intact.  She was told to take ibuprofen for her headaches, continue with Topamax for her seizure like symptoms, and prescribed an antidepressant (and SSRI) and recommended to therapy for her depression.  On May 25, 2016, Djedovic was seen again by Dr. Doucette for depression.  [Tr. 964] She was alert an cooperative and her judgment and insight were intact.  Her depression was improving with the antidepressant medication and she was planning on seeing a therapist soon.  Djedovic reported a decrease in her seizures but still had headaches.  [Tr. 963]

On August 7, 2016, neurologist David Peeples, M.D. conducted an independent medical evaluation of Djedovic through a physical exam and a review of her medical records to date.  He found Djedovic to be alert and oriented, her mood appeared to be appropriate, and she had no memory issues.  [Tr. 375]  Dr. Peeples observed that Djedovic gait was slow and guarded when under direct observation but much more free and fluid when indirectly observed.  [Tr. 376]  He stated that an EEG recording was needed to determine whether Djedovic's spells

were truly epileptic or behavioral/situational/or self-motivated. However, based on the presumptive diagnosis of seizures Dr. Peeples recommended that Djedovic should not drive until she has been without spells for six months.

On August 19, 2016, Djedovic returned to SLUCare for a follow-up visit with Dr. Pan.  [Tr. 431]  Her last EEG was noted to be normal although she again had a positive Romberg and unsteady gait.  She was told to increase her Topamax dosage at night to 150 mg to help with her seizure as well as her headaches.

On August 24, 2016, Dr. Doucette wrote a three-sentence letter addressed to "whom it may concern" in which she stated that Djedovic was being treated for "posttraumatic epilepsy and traumatic brain injury" and that she was not medically fit to work.  [Tr. 955]  On August 30, 2016, Djedovic went to a follow-up appointment at South County Health Center.  [Tr. 960]  She was feeling depressed but it was revealed that she had stopped taking her antidepressant medication because she had been traveling outside the country for about two months.  She agreed to restart her antidepressant that day.

On Novmber 11, 2016, Djedovic returned to SLUCare for a follow-up appointment with Dr. Pan.  [Tr. 441]  Her seizure frequency was noted as every 1-2 months.  She reported her headaches as not controlled and her sleep remained poor.  Her Topamax dosage was increased to 150 mg in the morning and to 200 mg at night.  An MRI scan was noted as not having any findings to explain Djedovic's

symptoms.  She was told not to drive until she was seizure free for six months.  [Tr. 447]

On December 1, 2016, Djedovic was seen by Robert Poetz, D.O. and reported her seizures were occurring less frequently since her medication dosage was increased.  [Tr. 990]  Her last seizure occurred a month earlier.  But she still has headaches that woke her at night and made her depressed.

On February 16, 2017, Djedovic was admitted to the South County Health Center for three days for a scheduled seizure screening.  [Tr. 1044]  She had no complaints other than a mild headache.  She reported her seizure spells occurred approximately every two months but have since improved based on an increase of Topamax to a 200 mg dose.  She was taken off her medication and purposely sleep deprived during her stay to try to capture any seizure events but her testing results were normal.

On February 20, 2017, Djedovic was seen by neuropsychologist F. Timothy Leonberger, Ph.D. for a consultative exam.  When asked why she was unable to work full-time Djedovic replied that she was not stable after the injury to her head, sometimes she would find herself lying down on the floor, and she had headaches.  [Tr. 464]  She reported that she lived in a house with her two children and that her parents lived close by.  She said that she liked someone to be with her at all times due to the possibility that she may have a seizure.  Her parents, husband, and two

9

teenage children help in this regard.  [Tr. 466]  She cooks but rquires to have

someone with her.  She can do laundry but gets help from her family because she

likes to avoid stairs.  She continues to drive when someone is with her because she

has a aura that warns her of a pending seizure activity.  She can handle her own

finances.  She goes shopping and out to dinner, meeting with friends, watching her

children's activities, playing video games, and visiting with her parents on a daily

basis.  Dr. Leonberger observed that Djedovic was awake, alert, and oriented

during his interview with her.  Her thinking was logical and sequential with no

thought disorder present.  Her mood appeared to be depressed.  Her attention /

concentration did not appear to be good.  No unusual gait or motor abnormalities

were observed.  Djedovic reported that she was depressed most of the time due to

her headaches and her unpredictable seizure activity.  She has disruptied sleep and

spends 1 to 2 hours awake in the middle of the night.  [Tr. 466]  She reported that

her last seizure occurred approximately 2 ½ months earlier.  [Tr. 465]  Dr.

Leonberger diagnosed Djedovic as having persistent depressive disorder.  [Tr. 467]

On March 3, 2017, a state agency psychologist, Martin Isenberg, Ph.D.,

reviewed Dejdovic's records and opined that Djedovic would have moderate

limitations in understanding, remembering, applying information, concentrating,

persisting, and maintaining pace.  [Tr. 84]  She also had mild limitations in

interacting with others and with adapting or managing herself.  She had no other limitations in the category of sustained concentration and persistence.

The last date Djedovic was eligible for disability benefits was March 31, 2017 (last date insured).  Following that date, on June 14, 2017, Djedovic reported to SLUCare that she had a seizure while driving and hit a tree but was not injured. [Tr. 1132]  She stated that this was the first seizure she had recently.  She had stopped taking her antiseizure medicine because she had been sick for about a month with nausea, vomiting, and diarrhea.  [Tr. 1139]

On August 14, 2017, Djedovic was seen by psychiatrist Adam J. Sky, M.D. for an independent psychiatric evaluation.  [Tr. 998]  Djedovic told Dr. Sky that her seizures occurred "maybe every month."  [Tr. 999]   The following month, on September 8, 2017, Djedovic was seen at SLUCare.  She reported that she had seizures approximately every three months.  On April 4, 2018, Djedovic was seen at SLUCare and reported that she had a seizure in March 2018 but that her seizure frequency varies and that she is sometimes seizure free for a couple of months. [Tr. 1173]

*The hearing before the Administrative Law Judge*

On September 18, 2018, 18 months after the date Djedovic was last insured, Djedovic appeared for her hearing before the ALJ.  Djedovic's attorney testified that she suffers from seizures that are of such severity she is unable to work.  He

11

testified that the seizures are happening multiple times a month.  She also suffers

from headaches and anxiety and has limitations with her memory and

concentration.  [Tr. 57]  Djedovic testified that she has seizures sometimes twice a

week, sometimes more.  She testified that she sometimes falls to the ground or

finds a family member helping her to the couch.  She rests or takes a nap after a

seizure.  [Tr. 59]  She testified that she has headaches every day and gets less than

four hours of sleep at night because of the headaches.  [Tr. 65]  She testified that

she gets dizzy when she stands and likes to have something to hold onto because

she is afraid of having a seizure and falling.  She uses a cane sometimes.  [Tr. 66]

If she sits more than 40-50 minutes it's hard for her to get up.

    She still drives to take the kids to school less than a mile from their house.

[Tr. 59]  At home she just sits or lays down and talks with her family if they are

there.  She tries to cook with her mom or sister and goes to the grocery store with

them.  [Tr. 67 - 68]

    Under questioning from her attorney, Djedovic testified that she has

depression because she can't sleep.  [Tr. 68]  When asked about her memory,

Djedovic testified she doesn't remember "some of the past stuff, what happened."

When asked if she can concentrate and focus on things she responded, "No I

can't."  She also testified that when she goes to the bathroom, showers, or dresses

herself she always wants a family member around based on her fear of seizures. She used to play soccer but doesn't anymore for fear of seizures.  [Tr. 69]

The ALJ then posited the following hypotheticals to the vocational expert based on Djedovic's age, education, and past work experience, who is limited as follows:

> [the] individual can lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently … stand/walk for about six hours and sit for up to six hours in an eight-hour workday with normal breaks …occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds … occasionally balance, stoop, kneel, crouch, and crawl … should avoid exposure to operational control of moving machinery, unprotected heights, and exposure to hazardous machinery … work limited to simple, routine, and repetitive tasks.

[Tr. 74]

The vocational expert opined that such an individual could not return to Djedovic's past work but could do a broad range of light work.  The ALJ modified the hypothetical to be an individual who can "stand/walk  for about two hours and sit for up to six hours in an eight hour workday with normal breaks."  [Tr. 74]  The vocational expert opined that such an individual could perform sedentary and unskilled work.  The ALJ asked whether such work would be available for an individual who had a seizure two times a month.  The vocational expert stated that if these seizures could happen any time including at work and that the individual

13

would need to lay down afterwards then the individual would not be able to hold down a job.  [Tr. 76]

*ALJ Decision*

The ALJ found that Djedovic met the insured-status requirements of the Social Security Act through March 31, 2017.  [Tr. 15]  He found that Djedovic had not engaged in substantial gainful activity from her alleged onset date on July 15, 2015 through her date last insured on March 31, 2017.  [Tr. 17]  He also found that Djedovic suffers from the following severe impairments: "chronic headaches, seizures, and depression."  [Tr. 18]  The ALJ found that, through the date last insured, this combination of severe impairments did not equate to one of the listings denominated in 20 CFR 404, Subpt. P, App. 1.  [Id.]  The ALJ found that, through the date last insured, Djedovic was unable to perform any past relevant work.  [Tr. 29]

After evaluating Djedovic's claims, the medical opinion evidence, and the medical evidence of record, the ALJ determined that Djedvoic retained the residual functioning capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) with some exception. The claimant can lift up to 20 pounds occasionally and 10 pounds frequently. She can stand/walk or about 2 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. She can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel,

crouch, crawl. She should avoid exposure to hazardous machinery. Her work is limited to simple, routine and repetitive tasks.

[Tr. 29]

The ALJ consulted a vocational expert (VE) to assess whether jobs within Djedovic's RFC existed in significant numbers in the national economy.  [Tr. 30] The VE identified the sedentary / unskilled jobs of stuffer, inspector, and table worker.  The VE identified 40,000 stuffer jobs, 42,000 inspector jobs, and 44,000 table worker jobs nationwide.  [Tr. 31]  The ALJ therefore determined that Djedovic was not disabled within the meaning of the Social Security Act through March 31, 2017, the last day insured.  [Tr. 31]

Djedovic appeals the ALJ's decision asserting that benefits should be awarded because the ALJ erred by: 1) posing an improper hypothetical to the vocational expert by omitting impairments regarding Djedovic's  concentration, persistence, and maintenance of pace; and 2) failing to give deference to one of Djedovic's treating physician's opinions.

### LEGAL STANDARD

To be eligible for disability insurance benefits under the Social Security Act, Djedovic must prove that she is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant

can perform her past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  Determining whether there is substantial evidence requires scrutinizing analysis.  Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ should not ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ=s finding.  Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

*ANALYSIS*

*A. The ALJ's hypothetical to the vocational expert was supported by the record and took into account a limitation on Djedovic's concentration, persistence, and maintenance of pace.*

Djedovic contends that the ALJ erred by failing to expressly detail Djedovic's alleged limitations in concentration, persistence, and maintenance of pace in the hypothetical proposed to the vocational expert.  "A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant."  Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996).  When an expert's testimony is based on an insufficient hypothetical it cannot be deemed substantial evidence to support a finding of "no disability."  Id.  In Newton, the ALJ acknowledged that the medical records supported a finding that the claimant often had deficiencies of concentration, persistence, and pace.  But instead of listing the details of those limitations the ALJ merely limited the claimant to simple work in the hypothetical to the vocational expert.  The Eighth Circuit Court of Appeals reversed because it found the ALJ's hypothetical limitation to simple work did not fully inform the vocational expert of the multiple limitations found in the claimant's medical record including:

> moderate deficiencies in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal work week, and perform at a consistent pace without an unreasonable number and length of rest periods.

Id.  Such extensive and detailed limitations do not exist in the medical record in the present case.  Dr. Isenberg noted that Djedovic had moderate limitations in concentration, persistence, and pace [Tr. 84] but clarified that the limitation only applied to the ability to carry out detailed instructions.  He noted that she was not significantly limited in the ability to: carry out very short and detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; to sustain an ordinary routine without special supervision; to make simple work-related decision; and to complete a normal workday and workweek and to perform at a consistent pace with normal rest periods.  He concluded Djedovic is capable of simple repetitive work.  [Tr. 90]

Consultative psychologist Dr. Leonberger met with Djedovic only one time and opined that she had a marked impairment in concentration, persistence, and pace.  [Tr. 467]  In contrast to the doctors' opinions in Newton, Dr. Leonberger did not elaborate further on this aspect of his opinion.  The ALJ gave little weight to Dr. Loenberger's opinion because it was based on Djedovic's neurological

impairments due to her seizure disorder and frequent headaches.  Dr. Loenberger is a psychologist and not a neurologist so his opinion in this area was discounted by the ALJ.  [Tr. 26]  An ALJ may discount an opinion by a medical source when it is beyond his expertise.  Wildman v. Astrue, 596 F.3d 959. 967 (8th Cir. 2010).

The ALJ's hypothetical to the vocational expert in the present case limited Djedovic's functional residual capacity to perform simple work.  Because this hypothetical captured Djedovic's moderate limitation in carrying out detailed instructions it sufficiently included all of Djedovic's limitations in concentration, persistence, and pace.  The ALJ's hypothetical did not run afoul of the decision in Newton based on the factual distinction between the cases.  See Faint v. Colvin, 26 F. Supp.3d 896, 911 (E.D. Mo. 2104) (distinguishing Newton regarding hypothetical for concentration, persistence, and pace).  See also King v. Berryhill, No. 1:18 CV 23 NCC, 2019WL1200334 at *6 (E.D. Mo. 2019) (collecting cases holding a hypothetical for simple, routine and repetitive tasks may sufficiently encompass moderate limitations in concentration, persistence, and pace).  As a result, I find that the ALJ did not err in his hypothetical to the vocational expert.

*B. The ALJ did not err in failing to give deference to one of Djedovic's treating physician's opinions.*

In a three-line letter dated August 24, 2016, Djedovic's treating physician, Dr. Doucette, wrote to whom it may concern that Djedovic was being treated for

posttraumatic epilepsy and traumatic brain injury and that she is not medically fit

to work.  [Tr. 955]   Djedovic asserts that the ALJ erred by not giving Dr.

Doucette's opinion any weight.  A treating physician's opinion regarding a

claimant's impairments will be granted controlling weight "provided that the

opinion is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the

record.  Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).  However, a medical

provider's opinion that a claimant is "unable to work" is not entitled to any weight

because it involves a decision that is reserved for the Commissioner.  Ellis v.

Barnhart, 392 F.3d 988, 944 (8th Cir. 2005).  The ALJ gave no weight to Dr.

Doucette's opinion that Djedovic was unable to work because this determination is

solely one to be made by the Commissioner.  [Tr. 25]  Moreover, Dr. Doucette's

opinion lacked any explanation or support.   She did not offer a function-by-

function analysis or cite to any medical evidence or testing to support her opinion.

Furthermore, multiple medical tests did not reveal any abnormalities in Djedovic's

brain functions or capture any physical basis for her claimed seizures.  Dejdovic's

claim at her hearing that she was having seizure episodes twice a week or more

was not supported by the medical record.  Substantial evidence in the medical

records indicates that Djedovic seizures were being responsive to treatment and her

episodes, before her last insured date on March 31, 2017, were limited to one or

less every two months.  As a result, the ALJ did not err in failing to give deference to Dr. Doucette's opinion regarding Djedovic's ability to work.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is affirmed.

An appropriate Judgement will be entered on this date.



_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2020.